Gaston, Judge.
 

 — As no specific instructions appear to have been asked by either party on the trial, the defendant is not entitled to a new trial, unless he can show that the jury was probably misled by the charge of the judge. Upon a fair construction of the charge, we think that it is not liable to this imputation. The main question in controversy was the intention with which Mrs. Torrence parted with, and Mrs. M'Knight took the possession of the slaves. It was
 
 then
 
 the settled law that if a parent put personal property, into the possession of his daughter soon after her marriage, it should be presumed
 
 prima facie,
 
 that the property was given absolutely in advancement of the daughter, but that this presumption must yield to proof that the property was only lent.
 
 Carter’s Executors
 
 v.
 
 Rutland,
 
 1 Hay. Rep. 97.
 
 Killingsworth
 
 v.
 
 Zollicoffer,
 
 2 Hay. Rep. 72.
 
 Robinson
 
 v.
 
 Devane,
 
 Ibid. 154. Much evidence was offered tending to show that the negroes in question had not been given, but lent. And the Judge was perfectly correct in leaving this part of the contro
 
 *289
 
 versy to the jury, with directions to decide, upon all the 'evidence, whether it was a loan or a gift. If a loan, the law pronounced its effect to be that of a bailment, revocable at the will of the bailor. We need not perplex ourselves with the question, what interpretation it would put upon the case proposed, of a
 
 loan
 
 expressly declared to be
 
 for life.
 
 No witness testifies to any precis
 
 (¡formula
 
 which was used in the transaction, so as to render it necessary to determine upon its technical operation. The transaction .
 
 ~
 
 , , , . . was informal, and the proper inquiry was to ascertain from the acts and declarations of the parties, and all the other attending circumstances, whether it was thereby intended to transfer any legal dominion in the slaves themselves, or only to permit them to be held free from hire, until the owner should think proper to redemand them.
 

 It is insisted, however, by the defendant, that whatever might have been the understanding or contract when the negroes were put into Mrs. M'Knight’s possession, the award of the arbitrators gave a legal title for life, and that this, in the case of a chattel, constitutes the entire dominion therein; and that therefore the charge of the J udge was on this point erroneous. Before we examine whether such would be the operation of an
 
 award
 
 in those terms, it is well to inquire what were the instructions in relation to the award. The statement of his Honor’s opinion on this part of the case, is given so briefly as to render it somewhat obscure. But it was the duty of the party who excepts to the opinion, to see that it should be so spread upon the record, as to enable us to determine whether in truth it bears the interpretation which he affixes to it. We are not permitted to doubt but that it -would have been stated more fully, had it been desired by the defendant, so as to present distinctly, the views which the Judge intended to convey. Examining the opinion as expressed, in connection with the statement of facts to which it applies, we understand it to be free from this objection. It had been testified that a short time before Mrs. Torrence died, she sent for John Harris to write her will, and despatched the witness to M‘Knight to see him about the negroes, in order that the disposition of them might be settled in her will.
 
 *290
 
 He would not have them as property, and the will was silent about them. After Mrs. Torrence’s death, the executor’s demanded the
 
 immediate
 
 possession, which M'Knight was willing to surrender, but his wife objected. It was then agreed to leave it to men to say “ what Mrs. Torrence
 
 intended
 
 should be done with the negroes.” There was no written submission, and therefore it is difficult to say what was its definite purpose; whether the parties meant that the arbitrators should pass upon the question of
 
 legal
 
 ownership or of
 
 equitable title,
 
 or only to ascertain what arrangement among the children of the deceased would best accord with the wishes of their mother. The referees called on John Harris; and after hearing him they decided (said the witness) “ that it was the old lady’s
 
 wish
 
 for Mrs. M'Knight to have them during her life, and she should have them accordingly;” and M'Knight remarked, that if his wife were dead
 
 they
 
 might take them
 
 immediately.
 
 This was not in writing; it was made thirty years before the trial, and it is impossible to suppose that the precise words of it could be stated. In reference to this representation of facts, the Judge remarked, that it seemed “ that it was submitted, and that the arbitrators decided, that as it was
 
 the old
 
 lady’s wish that she should hold the negroes for life, they therefore awarded them for life; but still the jury would decide from the evidence of the submission, whether it was the loan for life or the gift for life.” That is to say, as we believe it plainly imports, there is evidence of a submission to arbitrators in regard to these negroes now alleged by the defendant to have been given, but insisted always by the plaintiffs to have been only lent. There is evidence of a determination by the referees that Mrs. Torrence wished her daughter Betsey to enjoy them during life, and that therefore she ought to do so; but upon the evidence it remains for the jury to say whether the arbitrators decided more than that the negroes had been lent; that Mrs. Torrence did not wish the loan countermanded during Betsey’s life; and
 
 that
 
 therefore she should be permitted, by those interested in the estate, to hold them as lent, so long as she lived; or whether they decided that the negroes had been given for life, and that therefore she should hold
 
 *291
 
 them for life. If they put the former construction on the award, they were advised to find for the plaintiffs; but if the latter, then to find for the defendant. Of this advice, it seems to us, the defendant has no right to complain.
 

 Some objections were taken below to the evidence, which have not been insisted on here, and which we think were properly waived.
 

 Per Curiam. Judgment affirmed.